IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CRAIG YATES,

                Plaintiff,

v.

YEE MEI CHEUNG, *et al.*,

                Defendant.

NO. C10-5404 TEH

ORDER ON MOTION TO DISMISS

        This matter came before the Court on July 23, 2012, on a motion to dismiss brought by Defendants Yee Mei Cheung, Tat Cheung, Wai Bing Cheung, and Young Ng Ying (collectively "Defendants" or "the Cheungs"). For the reasons set forth below, the motion to dismiss is DENIED.

**BACKGROUND**

        On November 29, 2010, Plaintiff filed a complaint against the Cheungs, as well as against Maciel Cicero, Laghaei Farid, Village Pizzeria, Thidwick Books, Lea Grey, Period George, Bigson Lines, LLC, and Donald Gibson. The complaint alleged violations of the Americans with Disabilities Act, 42 U.S.C. section 12101, *et seq.* ("the ADA"). Plaintiff uses a wheelchair, and alleged that the defendant businesses bore significant physical barriers to his entry and use, and were thereby denying him full and equal access to public accommodations, in violation of the ADA and California state law. These defendants can be drawn into two distinct categories–the businesses to which Plaintiff alleged he had no access, and the landlords of those businesses–the Cheungs.

        The businesses were served, answered, and ultimately engaged in successful settlement discussions with the Plaintiff, resulting in dismissal of the claims against each of the settling business defendants. Thidwick Books was dismissed from the action on May 17,

1  2011; Period George was dismissed from the action on June 20, 2011; and finally Village
2  Pizzeria engaged in successful mediation with Plaintiff on March 13, 2012. The Cheungs, at
3  that time, had not yet been served, and on March 29, 2012 Plaintiff asked the Court to allow
4  service by publication. The Court granted this request, and ordered service by publication on
5  March 29, 2012. The last proof of service was filed by Plaintiff on May 4, 2012, and on May
6  23, 2012, Plaintiff filed a request for entry of default judgment on May 29, 2012. Defendants
7  filed an objection the next day, and the motion was withdrawn. The instant motion to
8  dismiss was then filed on May 29, 2012. The motion was then further delayed when
9  Defendants withdrew their consent to be heard by a magistrate judge, and the case was sent
10 from Magistrate Judge James to this Court.

11 Plaintiff's request to serve by publication was supported by a lengthy and detailed
12 declaration from counsel for Plaintiff, Tim Thimesch, in which he detailed his efforts to serve
13 the Cheungs. These efforts included searching Westlaw's Combined California Public
14 Records database (which includes 27 databases in its collection), Westlaw's National Public
15 Records database, Westlaw's People Map database, the databases of the California Secretary
16 of State and San Francisco County Assessor, calling the Assessor's office in search of further
17 information, attempting service on Defendants at addresses in Milpitas, San Francisco, and at
18 their P.O. Box address (when service at the other two addresses failed), filing a forwarding
19 address check with the Postmaster in Milpitas, asking attorneys for the defense for any
20 address they might have (and receiving only the P.O. Box address), questioning the business
21 defendants regarding how they communicated with their landlords and learning that the
22 landlords may reside in China, attempting to contact two agents of the landlords, Vincent Ng
23 and Stephen Dobson (identified by the business defendants), using reverse telephone
24 searches, attempting to depose the agents of the defendants, attempting secondary service by
25 mail on the defendants at yet another address in Millbrae (with included Notices and Waivers
26 of Service), employing professional skip tracers to seek further information on the
27 whereabouts of the Cheungs, attempting searches of forwarding addresses yet again,
28 attempting to get information from Ng and Dobson yet again, and finally seeking (and

2

1 receiving) an order to serve by publication. The efforts were, according to Plaintiff's
2 counsel's declaration, continual, beginning at the time of filing and concluding only after
3 receiving permission to serve by publication. Though Plaintiff was told by the owner of
4 Village Pizzeria that the "landlord" may live in China, and therefore researched service on
5 foreign nationals, he was never able to obtain any foreign address for the Cheungs.

6 The Cheungs now seek dismissal, arguing that the service by publication allowed by
7 this Court was inadequate, and asking the Court to find that the delay in service requires
8 dismissal of this action. Plaintiff responds with the litany of efforts above, and also
9 emphasizes for the Court the degree to which the landlord defendants are indispensable to
10 this action, as their cooperation is required in order for the barriers at issue to be demolished,
11 and repairs be made to the common areas in the involved buildings. Furthermore, the
12 settlement with Village Pizzeria cannot go forward without the landlords' involvement.

**LEGAL STANDARD**

15 The Court cannot exercise personal jurisdiction over a defendant unless there has been
16 proper service over a defendant pursuant to Federal Rule of Civil Procedure 4. *Direct Mail*
17 *Specialists v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir.1988)
18 (citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir.1982)). Without substantial
19 compliance with Rule 4, it is irrelevant whether a defendant has notice of a plaintiff's claims.

20 Federal Rule of Civil Procedure 4(m) mandates that a defendant must be served
21 within 120 days of the filing of the complaint, or else the action must be dismissed as to that
22 defendant, without prejudice. Fed. R. Civ. P. 4(m). However, the Court has discretion to
23 extend the time for service, if the plaintiff shows good cause for the failure to serve. *Id.* The
24 two alternative courses of action required by Rule 4(m) are that the court either dismiss the
25 action without prejudice against the particular defendants in question "or order that service
26 be made within a specified time." *In re National Security Agency Telecommunications*
27 *Records Litigation*, 564 F.Supp.2d 1109, 1137 (N.D. Cal. 2008). If plaintiff shows good

3

cause for the failure, however, the court "must extend the time for service for an appropriate period." *Id.*

When considering a motion to dismiss a complaint for untimely service, courts must determine whether good cause for the delay has been shown on a case by case basis. *Cartage Pac., Inc. v. Waldner (In re Waldner)*, 183 B.R. 879, 882 (9th Cir. BAP 1995). "Good cause", in the Ninth Circuit, means, at a minimum, "excusable neglect." *In Re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001). As this Court has previously ruled, "good cause generally means 'that service has been attempted but not completed, that plaintiff was confused about the requirements of service, or that plaintiff was prevented from serving defendants by factors beyond his control.' *See Mateo v. M/S KISO*, 805 F.Supp. 792, 795 (N.D.Cal.1992)." *Chemehuevi Indian Tribe v. Wilson*, 181 F.R.D. 438 (N.D. Cal., 1998). Furthermore, under Ninth Circuit law, once a showing of good cause has been made, a plaintiff may be "required to show the following: (a) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) the plaintiff would be severely prejudiced if the court dismissed her complaint." *Boudette v. Barnette,* 923 F.2d 754, 756 (9th Cir.1990).

Rule 4(m) does not apply its limits to service in a foreign country, which is governed by Rules 4(f) and 4(j). Fed. R. Civ. P. 4(m). Rule 4(f), which governs the service of individuals in a foreign country, dictates that where the foreign nation is a party to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"), an individual residing in that country shall be served by the method dictated in the Hague Convention. Fed. R. Civ. P. 4(f).

**DISCUSSION**

In their initial motion to dismiss, Defendants argued that Plaintiff's failure to serve them within the 120-day window allowed by Rule 4(m) was due to a conscious decision, on the part of Plaintiffs, to disregard these landlord Defendants and focus, instead, on reaching settlement with the business Defendants. They argue that the delay is strategic, and not due

4

to a difficulty locating and serving Defendants caused by Defendants' own unavailability, and therefore ask the Court to find no good cause for the delay and dismiss the complaint without prejudice. They do not elucidate, clearly, what the strategy is behind neglecting service, nor do they directly counter the assertions made in counsel's declaration, filed with Plaintiff's motion for service by publication, which details the efforts made to serve the Cheungs.

Plaintiff makes several arguments in response, relying on his efforts to contact Defendants in support of his claim of having exerted reasonable diligence, and also arguing that the fact that Defendants are foreign, and, furthermore, may have been evading service, further justifies the delay and ultimate service by publication. He urges the Court to find that service by publication outside the 120-day window allowed by Rule 4(m) was, indeed, proper.

In response to Plaintiff's argument regarding the foreign residency of Defendants, Defendants include, in their reply, further argument regarding the propriety of service under the Hague Convention, to which Plaintiffs have filed an objection. As the argument is brought in response to an assertion made in Plaintiff's response brief, the objection is overruled. The substance of the argument is as follows: Defendants argue that far from justifying any delay, the foreign residency of Defendants dictated that they be served by the Hague Convention protocols under Rule 4(f), rather than by the publication method, allowed under California Code of Civil Procedure section 415.50, and made proper by Federal Rule 4(m).

The questions before the Court, therefore, are twofold: first, was the Court's determination that Defendants could not be served with reasonable diligence in any other manner, and therefore may be served by publication, outside the 120-day window, correct? And, second, in the present circumstances, does the Hague Service Convention supercede and render improper the method of service allowed by California Code of Civil Procedure section 415.50?

5

With regards to the first question, the decision rests upon a showing of good cause, after which the Court may consider the remaining factors of actual notice and prejudice to either party. *Boudette,* 923 F.2d at 756. Defining "good cause" as meaning "that service has been attempted but not completed, that plaintiff was confused about the requirements of service, or that plaintiff was prevented from serving defendants by factors beyond his control," (*see Mateo*, 805 F.Supp. at 795) it is clear that the good cause demonstrated in this case falls firmly into the first category: service was copiously attempted, but, unfortunately, not completed. The efforts detailed by counsel in his declaration and in Plaintiff's opposition to the motion to dismiss are quite overwhelming. In this case, there does not seem to be much neglect of any kind which might have allowed sooner service–Plaintiff left no stone unturned in attempting to locate and serve the Cheungs.

Furthermore, the third type of good cause listed in *Mateo* may also be considered here, as the circumstances created by Defendants–who, in spite of purporting to be a California partnership, have created circumstances in which it is virtually impossible to discover their whereabouts–rendered Plaintiff unable to serve, and constitute a factor beyond Plaintiff's control. At oral argument, even the Cheung's own attorney could not state with certainty the address of his clients. This confusion surrounding their location supports a finding of good cause for an extension of time beyond the 120-day window.

Good cause having been shown, the Court then turns to the additional factors allowed by the Ninth Circuit, actual notice and prejudice. With regards to actual notice, it is clear that, at present, the Cheungs are aware of the ongoing litigation. More importantly, however, the facts contained in the declaration of Mr. Thimesch–uncontested by the Cheungs–strongly suggest they had actual notice much earlier in the litigation. At oral argument, counsel for the Cheungs acknowledged that his clients had been aware of the litigation, but argued that they had no duty to come forward and accept service–rather, the rules of service dictated that Plaintiff seek them out. Though it may be true that no duty of the sort described by counsel exists, the fact that the Cheungs have long been aware of this litigation allows the Court to

6

find that the actual notice in this case strongly diminishes the likelihood of undue prejudice to the Defendants in denying the motion to dismiss.

Continuing the discussion of prejudice, courts have held that where "little has occurred in the litigation that would prejudice a late-served individual defendant...[d]ismissal on the ground of failure to serve individual defendants would needlessly complicate the litigation and would not advance the interests of justice." *In re National Security Agency*, 564 F.Supp.2d at 1137 (granting a motion for extension of time of service 680 days after the time for service had expired). Here, dismissal may result in Plaintiff having some claims time-barred. As Plaintiff pointed out at oral argument, however, the statute of limitations issues could be overcome if Plaintiff were to visit the locations in question again, finding them still not in compliance and giving rise to the concerns contained in his present complaint. If there is a substantial likelihood that dismissal will only result in a proper re-filing of claims and subsequent proper service, it seems Defendants stand to gain little from prevailing on this motion, and such dismissal may only serve to further delay the litigation and increase costs. In short, to dismiss would be, in large part, an exercise in futility, in which a significant portion of the case would be merely re-filed, negating any prejudice to Defendants that might arise from denying dismissal, and prejudicing Plaintiff, who may be barred from bringing some of his present claims.

On the other hand, denying the motion to dismiss would be of little prejudice to Defendants. When asked to discuss the question of prejudice at oral argument, counsel for Defendants argued that the prejudice to Defendants in denying the motion to dismiss would lie in the issue of attorney's fees–essentially, that fees have grown high at this point, and failing to dismiss the action would prejudice Defendants by potentially subjecting Defendants to these increased fees. The Court cannot conceive of how the expected re-filing described above would alleviate the costs associated with this case, and therefore finds this argument on prejudice unpersuasive. An extension beyond the 120-day limit imposed by Rule 4(m) is clearly warranted here.

7

With regards to the propriety of granting service by publication, the Court found, in its order of March 29, 2012, that "Defendants cannot be served with reasonable diligence in any other manner provided in Sections 415.10 through 415.30 of the California Code of Civil Procedure or other options permitted under federal law..." (Order for Publication at 1-2). The record supports this finding.[1] The declared efforts of Plaintiffs, not clearly undermined or contradicted in Defendants' briefing, are more than enough to demonstrate that Defendants could not be served by any other means, and that, therefore, the last-resort option of service by publication was proper.

The final argument raised by Defendants, regarding the Hague Service Convention, is inapplicable here. According to *People v. Mendocino County Assessor's Parcel No. 056-500-09*, 58 Cal. App. 4th 120, 124-125, 68 Cal. Rptr. 2d 51 (Cal. App. 1997):

> The Hague Service Convention is a multilateral treaty that provides procedures for the service of process to defendants living in foreign jurisdictions. (*Kott v. Superior Court, supra*, 45 Cal.App.4th at p. 1133.) It applies "in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad. [¶] This Convention shall not apply where the address of the person to be served with the document is not known." (*Ibid*.) Hence, the Convention does not apply to situations in which the whereabouts of the defendant cannot be ascertained despite reasonable diligence. As the *Kott* court explained, "[t]he only method of service under California law which does not require the transmission of documents abroad, and consequently does not implicate the Hague Service Convention, is service of summons by publication where the party's address remains unknown during the publication period despite the exercise of reasonable diligence." (*Id.* at p. 1136.)

Here, Plaintiff was told that the Cheungs might be in overseas. However, he was unable to discover any known address in China, and, furthermore, was also confronted with a number of addresses in California, as well as an active P.O. Box in California, all of which suggested the landlords might not be in China at all. Defendants make the argument that once Plaintiff was told the Cheungs might be in China, the Hague Service Convention superceded California law and service was required under Rule 4(f), by the procedures mandated under the Hague Service Convention. However, as the case quoted above

---

[1] As noted above, at oral argument even the Cheung's own counsel did not know, with any measure of specificity, where the Cheungs might be found or served.

8

emphasizes, the Hague Service Convention only supercedes where there is a *known foreign address*. Here, no such foreign address was known. Therefore, we have a situation where "the party's address remains unknown during the publication period, despite the exercise of reasonable diligence" and, accordingly, proper service by publication. *Mendocino County*, 58 Cal. App. 4th at 125.

**CONCLUSION**

Because Plaintiff exerted significant, continued efforts to locate Defendants, and was, ultimately, unable to locate Defendants in spite of these efforts, good cause was shown and the Court's order allowing service by publication was proper. The motion to dismiss is therefore DENIED. A further case management conference shall be held on August 27, 2012, at 1:30 p.m. in Courtroom 12 of the U.S. District Court in San Francisco. Parties shall file their joint statement on or before August 20, 2012.

**IT IS SO ORDERED.**

Dated: 8/2/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

9